Gary S. Graifman, Esq.
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, NJ 07645
Tel: (201) 391-7000
Fax: (201) 307-1086
ggraifman@kgglaw.com

Mitchell M.Z. Twersky, Esq.
Jack G. Fruchter, Esq.
Ximena R. Skovron, Esq.
**ABRAHAM, FRUCHTER
& TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com

*Attorneys for Plaintiff Mayer Cohen*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAYER COHEN, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | <u>JURY TRIAL DEMANDED</u> |
| JOHNSON & JOHNSON, INC. and JOHNSON & JOHNSON CONSUMER COMPANIES, INC., | |
| Defendants. | |

Plaintiff Mayer Cohen (hereinafter, "Plaintiff"), by his attorneys, Abraham, Fruchter & Twersky, LLP, alleges the following upon information and belief, except for those allegations that pertain to Plaintiff, which are based on Plaintiff's personal knowledge:

## NATURE OF THE ACTION

1.    Plaintiff brings this action individually and on behalf of all other persons who purchased sun protection products manufactured by Defendants Johnson & Johnson, Inc. and Johnson & Johnson Consumer Companies, Inc. (together, "J&J" or "Defendants") under, *inter alia*, Aveeno® Active Naturals and Baby brand names that: (i) bear an "SPF" designation and (ii) were labeled and/or advertised to provide "sunblock," sweat or water "proof," "long-lasting" and/or "continuous" sun protection (hereinafter referred to as the "Aveeno Sun Protection Products"). As alleged herein, in making these claims, Defendants engaged in, and continue to engage in, deceptive business practices in connection with the labeling, advertising, marketing and sale of Aveeno Sun Protection Products which have harmed Plaintiff and the Class, defined below, and which will continue to harm consumers unless the practices are stopped.

2.    As detailed below, through their deceptive and misleading product labels and advertising, Defendants have led consumers to believe that their Aveeno Sun Protection Products provide "sunblock," "sweat and waterproof,"

1

"waterproof" "long-lasting and/or "continuous" sun protection when they knew or should have known that these claims are false and are misleading to consumers.

3.     Defendants have deceptively advertised, marketed, and represented that their Aveeno Sun Protection Products provide "sunblock" protection when, as Defendants knew or should have known, these products do not block all or anywhere close to all of the sun's harmful rays.

4.     Defendants have also deceptively advertised, marketed and represented that their Aveeno Sun Protection Products provide water and/or sweat "proof" sun protection when, as Defendants knew or should have known, the protection provided by these products diminished, over a period of time, after exposure to or immersion in water or sweat and was, thus, not truly "waterproof" or sweat "proof."

5.     Defendants have further deceptively advertised, marketed, and represented that the sun protection provided by their Aveeno Sun Protection Products is "long-lasting" or "continuous" when, as Defendants knew or should have known, the sun protection provided by these products diminished over time and after exposure to or immersion in water or sweat and thus did not truly constitute "long-lasting" or "continuous" sun protection.

6.     Defendants have engaged in the conduct alleged herein in order to induce consumers, including Plaintiff and members of the Class, to purchase Aveeno Sun Protection Products.

7.     As a consequence of Defendants' deceptive practices, members of the Class have purchased Aveeno Sun Protection Products under the false impression that they are receiving protection from all of the sun's ultraviolet rays, including those rays which cause skin damage and have been linked to melanoma, and/or protection that is impenetrable to or unaffected by water or sweat.

8.     Defendants' conduct alleged herein constitutes an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation of material fact in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, as well as a breach of express warranty. Plaintiff seeks, *inter alia*, an order permanently enjoining such practices, restitution, and actual and treble damages.

## JURISDICTION AND VENUE

9.     The Court has subject matter jurisdiction pursuant to 28 U.S.C.§ 1332(d) because this action is between citizens of different states, a class action has been pled in which the total number of potential class members is in excess of 100, and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

3

10.     This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants are organized under the laws of the state of New Jersey and their principal places of business are located within this District.

11.     Venue is proper pursuant to 28 U.S.C. §1391(a) because, *inter alia*, Plaintiff resides in this District, a substantial part of the events giving rise to the claims occurred in this District,  Defendants are organized under the laws of the state of New Jersey and their principal places of business are located in this District.

## PARTIES

12.     Plaintiff Mayer Cohen resides in New Jersey.  Throughout the Class Period, Plaintiff purchased several Aveeno Sun Protection Products, including "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 100+Face". Plaintiff purchased these products after viewing the representations on Defendants' labeling and in Defendants' long-term advertising campaign for Aveeno Sun Protection Products, which led Plaintiff to believe that Aveeno Sun Protection Products provided, *inter alia*, "sunblock," "waterproof," and "continuous" sun protection as claimed on Defendants' labeling and advertising.  Plaintiff paid a premium price for the products because he believed that these products provided the purported sun protection benefits claimed.  Plaintiff would not have purchased "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 100+Face"

had he known that Defendants' representations as alleged herein were false. As a result of his purchase of Aveeno Sun Protection Products, including "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 100+" and his exposure to Defendants' uniform conduct in labeling these products and engaging in a long-term advertising campaign using the misleading claims as alleged herein, Plaintiff suffered a loss, including but not limited to the monies he paid for the products he purchased.

13. Defendant Johnson & Johnson, Inc. ("J&J, Inc.") is a corporation organized and existing under the laws of the state of New Jersey and has its principal place of business located at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933. At all relevant times, J&J, Inc. on its own and/or through its subsidiaries, invented, developed, manufactured, distributed, labeled, advertised, promoted, and marketed, among other things, sun protection products for sale to Plaintiff and members of the Class in New Jersey and throughout the United States.

14. Defendant Johnson & Johnson Consumer Companies, Inc. ("J&J Consumer"), is a corporation organized and existing under the laws of the state of New Jersey and has its principal place of business located at 199 Grandview Road, Skillman, New Jersey 08558. At all relevant times, J&J Consumer on its own and/or through its parent and subsidiaries, invented, developed, manufactured,

distributed, labeled, advertised, promoted, and marketed, among other things, sun

protection products for sale to Plaintiff and members of the Class in New Jersey

and throughout the United States.

## DEFINITION OF THE CLASS AND CLASS ALLEGATIONS

15.     Plaintiff brings this action on behalf of himself and all other similarly

situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of

Civil Procedure and seeks certification of the following class:

> All natural persons in the United States, its possessions,
> or territories who purchased an Aveeno Sun Protection
> Product within four years of the date that the complaint
> was filed (the "Class Period").

> Excluded from this Class are Defendants and their
> officers, directors and employees, and those who
> purchased an Aveeno Sun Protection Product for the
> purpose of resale (the "Class").

16.     **Numerosity.**  The members of the Class are so numerous that joinder

of all members of the Class is impracticable. Plaintiff is informed  and  believes

that the putative Class contains thousands of purchasers of Aveeno Sun Protection

Products who have been damaged by Defendants' conduct as alleged herein. The

precise number of Class members is unknown to Plaintiff.

17.     **Existence and Predominance of Common Questions of Law and**

**Fact.** This action involves common questions of law and fact, which predominate

6

over any questions affecting members of the Class.   These common legal and factual questions include, but are not limited to, the following:

a)      whether Defendants' representations as alleged herein constitute an unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation of a material fact or facts;

b)      whether the alleged conduct constitutes a breach of express warranty;

c)      whether Plaintiff and members of the Class have suffered damages; and

d)      whether Plaintiff and members of the Class are entitled to equitable relief, including injunctive relief and restitution.

18.      **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all members of the Class were injured through the uniform misconduct described herein and were subject to Defendants' deceptive sun protection claims alleged herein.   Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

19.      **Adequacy of Representation.**   Plaintiff will fairly and adequately protect the interests of the members of the Class.   Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.   Plaintiff has no adverse or antagonistic interests to those of the Class.

20.    **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual members of the Class is relatively small compared to the burden and expense that would be entailed by the individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if members of the Class have the resources to conduct such individualized litigation, the court system does not have the resources to adjudicate each and every such action. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and to the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

21.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to all members of the Class, to enjoin and prevent Defendants from engaging in the acts described, and

requiring Defendants to provide full restitution to Plaintiff and members of the Class.

22.     Unless the Class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and members of the Class. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and members of the Class will continue to be misled.

## FACTUAL ALLEGATIONS

### I.     Introduction

23.     Sunlight reaches the Earth in heat waves called infrared, or in invisible rays, called ultraviolet (UV) rays. Ultraviolet rays, in small amounts, act as a catalyst in the manufacture of Vitamin D in the body. Although some UV rays are necessary for our well-being, over exposure to UV rays can cause premature wrinkling, skin cancer, and photokeratitis, or snowblindness. Research has shown that UV rays damage the DNA in skin cells, putting people at higher risk for skin cancer, and permanent eye damage. UV radiation can also have a damaging effect on the immune system and premature aging of the skin, giving it a wrinkled, leathery appearance. Exposure to UV radiation has also been linked to melanoma, a deadly and incurable form of skin cancer.

24.     Consumer sun protection products, which are commonly referred to as "sunscreens," purport to protect the skin from the sun's UV rays.  Despite ever higher rates of use by consumers in the United States of these products, the number of skin cancer cases has been rising dramatically over the years.  More than 3.5 million skin cancers in over two million people are diagnosed annually in the United States.

25.     Melanoma rates are also rising dramatically. In 1980, an American's lifetime risk for contracting melanoma was 1 in 250.  Today, it is 1 in 55.

26.     During this same period of time, U.S. sales figures for sun protection products have jumped from $18 million in 1972 to over $800 million in 2011.

27.     Several published studies, including one conducted in 1998 by Brookhaven National Laboratories, a laboratory overseen by the U.S. Department of Energy, have found that there is a positive link between the use by consumers of sun protection products and the rise in melanoma. The studies found that because many of these products in fact do not block all of the sun's harmful rays as their labeling and advertising suggests, consumers are being given a false sense of security about the benefits of using the products, and are staying out in the sun longer based on that false assumption.

28.     In 2000, the United Nations, through its International Agency for Research on Cancer, found that "[s]everal relevant epidemiological studies have

10

shown significantly higher risks for melanoma in users of sunscreens than in non-users" and that the "protective effects of sunscreens can be outweighed by overexposure based on the false assumption that sunscreens completely abolish the adverse effects of UV-light."

29.    Children are also at risk as a result of Defendants' misrepresentations. In a 1998 study published in the Journal of the National Cancer Institute, scientists found that the presence of moles predictive of melanoma was actually higher in children who used sun protection products, as opposed to those who did not use sun protection products or who wore protective clothing in the sun.    The researchers concluded that the data from the study "strengthen the hypothesis that the use of sunscreens increases the risk of melanoma."  Skin aging and cancer are delayed effects that do not usually show up for many years after the exposure. Since the damage is not immediately visible, young people are often unaware of the dangers of tanning.  Physicians and scientists are especially concerned that cases of skin cancer will continue to increase as people who are now in their teens and twenties reach middle age.

30.    Defendants knew or should have known about these scientific studies, which have been conducted and published over the course of the last decade in leading medical journals by noted scientists at institutions such as the United

11

Nations International Cancer Research Agency, the Brookhaven National Laboratory, and the Memorial Sloan-Kettering Cancer Center.

## II.    Regulatory Background

31.    In 1993, the FDA issued *Sunscreen Drug Products for Over-the-Counter Human Use; Tentative Final Monograph*, 58 Fed. Reg. 28194 (May 12, 1993) ("TFM"), in which the FDA, among other things, prohibited manufacturers from making labeling claims that are "false or misleading in any particular."

32.    In the TFM, the FDA recognized that accurate product labeling provides "important information for consumers" given the known risks of skin damage and other harmful effects of the sun. TFM, 58 Fed. Reg. 28194, 28209.

33.    In 1999, the FDA issued *Sunscreen Drug Products for Over-the-Counter Human Use; Final Monograph*, 64 Fed. Reg. 27666 (May 21, 1999) ("FM").

34.    In the TFM and FM, the FDA made the following findings:

(1)    The term "sunblock" cannot be used on product labels. "The agency has decided not to include the term "sunblock" in the final monograph and now considers this term nonmonograph. The agency is concerned that the term "sunblock" on the label of sunscreen drug products will be viewed as an absolute term which may mislead or confuse consumers into thinking that the product blocks all light from the sun." FM, 64 Fed. Reg. 27666 at 27680; and

12

(2)     The term "waterproof" is not permitted in product labeling as it may be confusing or misleading to consumers. "The agency is concerned . . . that the term "waterproof". . . may be confusing or misleading to consumers because of the manner in which consumers may consider this term. The term "waterproof" is defined as "impenetrable to or unaffected by water" . . . . The agency believes that the term "waterproof" could be interpreted by consumers to describe something that is completely resistant to water regardless of time of immersion, a meaning which is not consistent with the meaning of the term in the Panel's recommended monograph. Therefore, the agency is not proposing the labeling claim "waterproof," but is proposing instead the term 'very water resistant.'" TFM, 58 Fed. Reg. 28194 at 28228; FM, 64 Fed. Reg. 27666 at 27675-76.

35.     In 2001, the FDA stayed the effective date of the FM "until further notice." FM, 64 Fed. Reg. 27666, 27666-67. The FDA further stated that until it addressed protection claims on product labels, "labeling may continue in accord with the tentative final monograph and its amendments." FM, 64 Fed. Reg. 27666 at 27672-73.

36.     In 2005, Senator Christopher Dodd (D-Conn.) criticized the stay of the FM, citing his concern for the health and safety of consumers and the importance of providing consumers with "clear, accurate, and comprehensive sunscreen labeling as their first line of defense against skin cancer." *See* 151

13

Cong. Rec. S10,330 at S10,330-31 (daily ed. Sept. 22, 2005) (statement of Sen. Dodd).

37.    A Congressional committee also criticized the failure of the FDA to issue any specific labeling regulations "although skin cancer rates continue to rise, especially among young persons and women." *See* Conference Report on S.830, FDAMA, 143 Cong. Rec. H10452 (Nov. 9, 1997); H.R. Rep. No. 109-255, 109th Cong., 1st Sess., Tit. VI at 102 (2005).

38.    In 2011, the FDA issued a final rule, *Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use; Final Rule*, 76 Fed. Reg. 35620 (June 17, 2011), stating, *inter alia*, that "we are identifying the terms "sunblock" "waterproof," and "sweatproof" as false and misleading, as we have stated in previous sunscreen rulemakings:

- Sunblock (64 FR 27666 at 27679 and 27680)

- Sweatproof (58 FR 28194 at 28227 through 28228)

- Waterproof (58 FR 28194 at 28227 through 28228)

We have previously identified these claims as ones that would render a product misbranded but are addressing them again in this document because OTC sunscreen products currently marketed without approved applications continue to contain the claims."

14

39.   By ignoring the FDA's findings as detailed herein and the overwhelming scientific evidence that Defendants' labeling and advertising practices are leading people to stay out in the sun longer and therefore to unnecessarily put themselves at risk for among other things, contracting melanoma, Defendants have acted with a willful and conscious disregard for the health and safety of others.

### III.   Defendants' Labeling and Advertising Practices

40.   Defendants have spent millions of dollars promoting the sun protection benefits purportedly provided by Aveeno Sun Protection Products, both on product labeling and in a widespread advertising campaign over the course of three decades.

41.   During the Class Period, the labeling and advertising pertaining to Aveeno Sun Protection Products, regardless of the ingredient formulation or other information provided on the specific product label or in advertisements, was false and misleading because Defendants claimed that these products provide "sunblock" protection when, as Defendants know or should have known, and unbeknownst to Plaintiff and members of the Class, Aveeno Sun Protection Products do not block all or anywhere close to all of the sun's rays.  Moreover, Defendants know or should have known that the FDA has found that the term "sunblock" is misleading to consumers as it will be viewed as an absolute term

15

which may mislead or confuse consumers into thinking that the product blocks all light rays from the sun.

42. During the Class Period, the labeling and advertising pertaining to Aveeno Sun Protection Products, regardless of the ingredient formulation or other information provided on the specific product label or in advertisements, was false and misleading because Defendants claimed that such products provide water or sweat "proof," "long-lasting" and "continuous" sun protection when, as Defendants know or should have known, and unbeknownst to Plaintiff and members of the Class, the protection provided by these products diminishes, over time, after exposure to or immersion in water or sweat and is, thus, not truly water or sweat "proof" nor do they provide "long-lasting" or "continuous" protection. Moreover, Defendants know or should have known that the FDA has found that the terms "waterproof" and "sweatproof" are misleading to consumers as they could be interpreted to describe something that is completely resistant to water regardless of time of immersion.

43. For example, through the use of materially misleading labeling and advertising, Defendants misled Plaintiff and the Class by falsely representing that their "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 100+ Face" provides "sunblock" protection that is "waterproof" and "continuous." In fact, "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF

16

100+Face" used by Plaintiff and members of the Class, at best, only protects the skin against some of the sun's rays and is, thus, not a true "sunblock." Moreover, the sun protection provided by the product diminishes over time and when immersed in water or exposed to sweat, and thus, is not truly "continuous" or "waterproof."

44.    For example, through the use of materially misleading labeling and advertising, Defendants misled members of the Class by falsely representing that their "Aveeno Active Naturals Hydro Sport Sunblock Spray SPF 30" provides "sunblock" protection that is "long-lasting" and "sweat and waterproof." In fact, "Aveeno Active Naturals Hydro Sport Sunblock Spray SPF 30" used by members of the Class, at best, only protects the skin against some of the sun's rays and is, thus, not a true "sunblock." Moreover, the sun protection provided by the product diminishes over time and when immersed in water or exposed to sweat, and thus, is not truly "long lasting," "continuous," or "sweat and waterproof."

45.    Through the use of materially misleading labeling and advertising, Defendants misled members of the Class by falsely representing that their "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 30" is a "sunblock," provides "better, longer-lasting sun protection" and "maintains protection over time against the sun's harmful rays." In fact, "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 30" used by members of the Class, at best, only

protects the skin against some of the sun's rays and is, thus, not a true "sunblock." Moreover, the sun protection provided by the product diminishes over time and thus is not truly "better, longer-lasting sun protection" nor "maintains protection over time against the sun's harmful rays."

46.     Through the use of materially misleading labeling and advertising, Defendants misled members of the Class by falsely representing that their "Aveeno Active Naturals Continuous Protection Sunblock Body Lotion SPF 85" provides "sunblock," "waterproof" "long lasting," and "continuous" protection from the sun.   In fact, "Aveeno Active Naturals Continuous Protection Sunblock Body Lotion SPF 85" used by members of the Class, at best, only protects the skin against some of the sun's rays and is, thus, not a true "sunblock."  Moreover, the sun protection provided by the product diminishes over time and thus is not truly "long lasting" or "continuous." The product also does not truly provide "waterproof" protection as specifically alleged herein.

47.     Through the use of materially misleading labeling and advertising, Defendants misled members of the Class by falsely representing that their "Aveeno Baby Continuous Protection Sunblock Lotion SPF 55" provides "sunblock" and "waterproof" protection and "longer lasting sun protection from the sun's harmful rays." In fact, "Aveeno Baby Continuous Protection Sunblock Lotion SPF 55" used by members of the Class, at best, only protects the skin against some of the

18

sun's rays and is, thus, not a true "sunblock." Moreover, the sun protection provided by the product diminishes over time and thus is not truly "longer lasting" or "continuous." The product also does not truly provide "waterproof" protection as specifically alleged herein.

48.     Through the use of materially misleading statements contained in advertisements, Defendants misled members of the Class by falsely representing on their website www.aveeno.com and in other advertisements that their products provide "sunblock," "waterproof," "sweatproof," "long lasting," and/or "continuous" protection.  For example, Defendants represented on their website that "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 100+ Face" "is formulated to provide superior, long-lasting protection against skin damage caused by the sun," is a "sunblock" and "waterproof."  In fact, "Aveeno Active Naturals Continuous Protection Sunblock Lotion SPF 100+ Face" used by members of the Class, at best, only protects the skin against some of the sun's rays and diminishes over time and is, thus, not a true "sunblock," nor does it provide "superior, long-lasting protection against skin damage caused by the sun."  As alleged above, the product also does not truly provide "waterproof" protection.

## COUNT I
### Violation of New Jersey Consumer Fraud Act (the "Act")
### (N.J.S.A. 56:8-1 *et seq.*)

49.     Plaintiff incorporates by reference the paragraphs above as though fully set forth herein.

50.     Defendants, as corporations, companies or sellers, are each a "person" within the meaning of the Act, and as such are prohibited from engaging in any unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation of material fact.

51.     Defendants' conduct in connection with the promotion, labeling, advertising, marketing, distribution and sale of Aveeno Sun Protection Products as alleged herein constitutes an unconscionable commercial practice and a deception, fraud, false promise and misrepresentation of material fact.

52.     Defendants' conduct as alleged herein stands outside the norm of reasonable business practices.

53.     Plaintiff and the members of the Class purchased Aveeno Sun Protection Products and paid a premium price for such products because they believed that the products provided the sun protection benefits claimed.

54.     As a result of Defendants' conduct as alleged herein, Plaintiff and members of the Class suffered ascertainable losses of monies, including but not necessarily limited to, the amount they paid for Aveeno Sun Protection Products.

20

55.    Plaintiff has complied with all conditions precedent to bringing a private action under the Act.

56.    Plaintiff and members of the Class are entitled to all statutory remedies available under the Act, including but not limited to preliminary and permanent injunctive relief, actual and treble damages, reasonable attorneys' fees, filing fees and the reasonable costs of suit.

## COUNT II
### Breach of Express Warranty
### (N.J.S.A. 12A:2-313 *et seq.*)

57.    Plaintiff incorporates by reference the paragraphs above as though fully set forth herein.

58.    The advertisements, product labels, and other similar uniform representations disseminated by Defendants regarding Aveeno Sun Protection Products were, and are, affirmations of fact and/or promises that these products will provide "sunblock," "sweat and waterproof," "waterproof," "long-lasting" and/or "continuous" sun protection.

59.    Defendants labeled and advertised their Aveeno Sun Protection Products in order to bring such products and the quality of those products to the attention of Plaintiff and members of the Class. Defendants sought to create consumer demand through the use of such labeling and advertisements by attesting to the quality of such products and in particular by attesting to their ability to

21

provide "sunblock," "sweat and waterproof," "waterproof," "long-lasting" and/or "continuous" sun protection.

60.    Defendants' advertisements, labels and other similar representations were affirmations of fact constituting express warranties that Aveeno Sun Protection Products would conform thereto.

61.    Aveeno Sun Protection Products failed to conform to the express warranties made to Plaintiff and members of the Class.  Defendants breached their express warranties because Aveeno Sun Protection Products did not provide "sunblock" protection as they did not block all the sun's rays and did not provide "sweat and waterproof," "waterproof," "long-lasting" and/or "continuous" sun protection as specifically alleged herein.

62.    Plaintiff and members of the Class were damaged thereby and are entitled to recover such damages and obtain any other legal or equitable relief the Court deems appropriate.

**WHEREFORE,** Plaintiff, individually, and on behalf of the Class, demands judgment as follows:

1. An order certifying this action as a class action, appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

2. A preliminary and permanent injunction enjoining Defendants from engaging in the practices complained of herein, during the pendency of the action and permanently thereafter;

3. Restitution, plus accrued interest;

4. Actual damages for injuries suffered by Plaintiff and Class members;

5. Treble damages pursuant to N.J.S.A. 56:8-1 *et seq.*;

6. Reasonable attorneys' fees, filing fees and reasonable costs of suit pursuant to, *inter alia*, N.J.S.A. 56:8-19; and

7. Such other legal or equitable relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: December 6, 2012

>  /s/ Gary S. Graifman
> Gary S. Graifman, Esq.
> **KANTROWITZ, GOLDHAMER**
> **& GRAIFMAN, P.C.**
> 210 Summit Avenue
> Montvale, NJ 07645
> Tel: (201) 391-7000
> Fax: (201) 307-1086
> ggraifman@kgglaw.com

Mitchell M.Z. Twersky, Esq.
Jack G. Fruchter, Esq.
Ximena R. Skovron, Esq.
**ABRAHAM, FRUCHTER**
**& TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, NY 10119
Tel: (212) 279-5050
Fax: (212) 279-3655
mtwersky@aftlaw.com

*Attorneys for Plaintiff Mayer Cohen*